```
UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CECILIO REYES,                                  :
                                                :
                    Petitioner,                 :         MEMORANDUM
                                                :         AND ORDER
                                                :
        -against-                               :         07 CV 1614 (JG)
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
                    Respondent.                 :
-----------------------------------------------------------X
```

A P P E A R A N C E S :

    CECILIO REYES
        No. 71342-053
        FCI Allenwood - Low
        P.O. Box 1000
        White Deer, PA 17887
        Petitioner, *pro se*

    ROSLYNN R. MAUSKOPF
        United States Attorney
        Eastern District of New York
        One Pierrepont Plaza
        Brooklyn, NY 11201
    By:   Robert L. Capers
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Cecilio Reyes, incarcerated at the Allenwood Federal Correctional Institution, petitions this Court *pro se* for relief under 28 U.S.C. § 2255, arguing that his trial counsel Michael K. Schneider and his appellate counsel Richard E. Kwasnik were both ineffective, thus depriving him of his right to counsel under the Sixth Amendment. Reyes alleges that Schneider (1) failed to move to dismiss the charges against him on speedy trial grounds; (2) made improper concessions at trial due to his failure to inform Reyes of, or allow him input regarding, the

1

defense strategy; (3) failed to inform Reyes that he had a right to testify in his own defense; (4) failed to call two individuals, Carlos Adon and Rosa P. Valdez, as defense witnesses; (5) failed to object to certain testimony by government witnesses and to the admission of a sample of imitation heroin as physical evidence; and (6) failed to object to allegedly erroneous jury instructions. Reyes further claims that Kwasnik (1) failed to consult with him regarding the issues on appeal and (2) failed to advise him that he had a right to petition the Supreme Court for a writ of certiorari following the decision of the court of appeals. The government denies many of Reyes' factual assertions and argues that the rest do not constitute ineffective assistance of counsel. The petition is denied for the reasons stated below.

## BACKGROUND

Cecilio Reyes was arrested on September 29, 2004 due to a transaction with government cooperating witness Wilfredi Pino-Correa, Gov.'s Mem. 2, who had just been arrested in connection with a conspiracy to import a kilogram of highly concentrated heroin from Puerto Rico into the United States. Trial Tr. 247-60. The government's evidence established that the transaction between Pino-Correa and Reyes was a controlled delivery of imitation heroin -- pancake mix had been substituted for the heroin seized in Puerto Rico -- from Pino-Correa to Reyes. Gov.'s Mem. 3. It further established that Pino-Correa sold Reyes a sample of imitation heroin which Reyes took to be a small portion of the kilogram from Puerto Rico for Reyes to test, as a preliminary step to Reyes buying the entire kilogram. Trial Tr. 17-24. Although his trial and appellate attorneys both conceded that Reyes intended to buy the sample, Schneider Aff. 2; Gov.'s Mem. Ex. C 1, Reyes in this petition maintains that he only engaged in an

innocent barter transaction in which he sought to sell his car to Pino-Correa in exchange for a motorcycle and money, Pet'r's Mem. 2.

Reyes was indicted on October 29, 2004. In light of plea negotiations, the court excluded speedy trial time from November 10, 2004 through December 17, 2004. Reyes made a motion to sever the charges against him from those against Pino-Correa on January 1, 2004, which was denied on January 14, 2005. Due to ongoing plea negotiations, the court excluded speedy trial time from January 14, 2005 through February 4, 2005. Gov.'s Mem. 4-5. On February 4, 2005, trial was scheduled from March 7, 2005 and the case was transferred to me from the previous district judge. Shortly before trial, I granted a motion to adjourn without specifying a date due to a medical emergency involving the government's attorney.

At a status conference on March 18, 2005, both parties agreed that the case was ready for trial. When Schneider was asked whether he would prefer that Reyes be tried before or after an upcoming three-to-four-week trial scheduled before me, Schneider said, "Despite the shortness of this case, it's serious for Mr. Reyes. He has no record. It's a ten-year count. So I'm happy to wait." March 18, 2005 Status Conference Tr. at 4. Accordingly, both parties consented to go after the other trial, setting Reyes' trial date as May 16, 2005. A final adjournment was granted between May 16, 2005 and May 23, 2005. After a two-day trial, Reyes was found guilty of attempted possession of heroin with intent to distribute. Reyes' conviction was affirmed on appeal. *United States v. Pino-Correa*, 185 F. App'x 65 (2d Cir. 2006).

Reyes makes several claims regarding his counsel's alleged deficient performance. First, Reyes claims Schneider erred in failing to move to dismiss the indictment on the ground that delay in bringing him to trial had violated Reyes' statutory right to a speedy trial.

3

Pet'r's Mem. 14. It is undisputed that Schneider did not make such a motion. Second, Reyes claims that Schneider never informed him of the defense strategy until Reyes heard it at trial, which Reyes claims is why Schneider inaccurately conceded that Reyes intended to buy a sample of heroin. Pet'r's Aff. 2. Schneider denies this, stating in an affirmation that he discussed trial strategy extensively before the trial and that Reyes agreed with his trial strategy, including the concession that Reyes intended to purchase a small amount of heroin. Schneider Aff. 1-2. Reyes asserts in his reply that Schneider's affirmation is untruthful. Pet'r's Reply, Sept. 14, 2007, 4-9.[1]

Third, Reyes claims that Schneider prevented him from testifying in his own defense by never advising him that he had a right to testify. Pet'r's Aff. 3. Schneider states that he specifically recalls advising Reyes that he had a right to testify. Schneider Aff. 2. Schneider also claims that Reyes' various accounts of the events leading up to his arrest were inconsistent not only with the evidence but also with each other, and also that Mr. Reyes did not question the trial strategy at a meeting after the verdict and only later criticized it. *Id.* at 3. Reyes vigorously denies this. Pet'r's Reply, Sept. 14, 2007, 4-9.

Fourth, Reyes claims that Schneider erred in failing to interview two individuals who were present at the transaction, Carlos Adon and Rosa Pontiers Valdez, and then call them as witnesses. Pet'r's Mem. 12. Schneider affirms that he believed himself to be ethically barred

---

[1] Schneider states that Reyes understood that even if his proposed defense (admitting to purchasing some drugs) was successful, Reyes would still be convicted of a crime. Schneider Aff. ¶ 8. Reyes does not understand how a defense could allow him to be convicted of a crime other than that charged in the indictment, and suggests that this statement impeaches Schneider's credibility by showing that Schneider was proposing a legally impossible defense. Pet'r's Reply, Sept. 14, 2007, 6. In fact, however, a jury could have found Reyes guilty of a lesser included offense (in this case, attempt to possess with intent to distribute less than one kilogram of heroin) even if that offense is not specifically charged in the indictment. See Fed. R. Crim. P. 31 ("A defendant may be found guilty of . . . an offense necessarily included in the offense charged . . . ."). Therefore, Schneider's affirmation outlines a legally viable defense.

4

from interviewing Adon without consent of Adon's counsel, as Adon had been arrested and charged in the case but not indicted. Since Adon's counsel denied permission to interview him, Schneider felt it would be unwise to call Adon as a witness without being able to speak to him first. Schneider Aff. 2. Schneider additionally felt that Adon's testimony would not be helpful to the defense due to Adon's own involvement in the transaction. As to Valdez, Schneider denies that Reyes ever asked him to call her as a witness, and also states that he tried to locate her but without success. Schneider Aff. 3.

Fifth, Reyes alleges that Schneider erred in failing to object to testimony regarding drugs seized from Pino-Correa's father in Puerto Rico, in failing to object to the testimony of the government's expert witness, and in failing to object to the admission of the imitation heroin sample into evidence. Pet'r's Mem. 12-13. It is undisputed that Schneider did not make such objections. Sixth, Reyes claims that Schneider was ineffective in failing to object to a jury instruction regarding the elements of possession with intent to distribute when Reyes was never proved to have possessed any drugs. Pet. 5.

Reyes claims that his appellate counsel Kwasnik was ineffective for failing to consult with him about the issues to be raised on appeal. Pet'r's Mem. 14-15; Pet'r's Aff. 17. Kwasnik denies this, claiming that he and Reyes discussed the issues he would raise on appeal on several occasions. Gov.'s Mem. Ex. C 1. Reyes also claims that Kwasnik erred in failing to advise him that he could petition the Supreme Court for a writ of certiorari. Pet'r's Mem. 15. Kwasnik acknowledges such discussions did not take place. *See* Gov.'s Mem. Ex. C 2 ("July 6, 2006 I sent Mr. Reyes copy [sic] of the decision of the Second Circuit and advised that I would take no further action.").

DISCUSSION

A.  *Legal Standard*

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . ."). The Supreme Court has "'declined to articulate specific guidelines for appropriate attorney conduct,'" instead emphasizing that "'the proper measure of attorney performance remains

simply reasonableness under prevailing professional norms,'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688-89), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).

To establish the required "reasonable probability" that counsel's error's changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*, 466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome," *id.* This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

B.  *Speedy Trial Act*

18 U.S.C. § 3161(c)(1) provides that the trial of an indicted defendant must commence within 70 days of the date the indictment is filed and made public. However, certain periods of time may be excluded from counting toward the 70-day time limit under § 3161(h). The period of time between making a pretrial motion and the disposition of that motion is excluded pursuant to 18 U.S.C. § 3161(h)(1)(F), and thus in this case the period of time from January 5, 2005 through January 14, 2005 is excluded.

A court may additionally exclude time if it finds that the interests of justice in so doing outweigh the interest of the defendant and the public in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). However, this exclusion will be effective only if the court notes on the record the reasons that lead it to find the ends of justice favor granting the continuance. *Id.* Here, the periods from November 10, 2005 through December 17, 2005, and from January 14, 2005 through February 2, 2005 were properly excluded under § 3161(h)(8)(A) due to ongoing plea

7

discussions. However, the adjournment of trial granted on March 7, 2005 due to a medical emergency involving the government's attorney was not stated to be excludable under § 3161(h)(8)(A), and no reasons were noted by the court on the record for excluding that time period from the speedy trial calculations. *See Zedner v. United States*, 126 S. Ct. 1976, 1988 (2006) (failure by court to put finding that ends of justice favored granting continuance on the record was not harmless error even where circumstances justified such finding). Therefore, by March 16, 2005, 71 non-excludable days had passed without the trial commencing.

Under 18 U.S.C. § 3162(a)(2), the defendant is entitled to dismissal of the indictment if he is not brought to trial within § 3161(c)'s time limit and he makes a motion before trial begins. If the defendant does not move for dismissal prior to trial, he waives his right to dismiss the indictment under § 3162(c)(2). As Schneider did not move for dismissal prior to trial, he waived Reyes' right to dismissal of the indictment.

The government argues that Schneider's failure to move to dismiss the indictment was reasonable, as Schneider intentionally and for strategic reasons waived his objections to the delay at the March 18, 2005 status conference. Gov.'s Mem. 12-13. At that status conference, Schneider consented to setting May 16, 2005 for what were clearly strategic reasons. Gov.'s Mem. Ex. D 4. The government's suggestion seems to be that on March 18, 2005 Reyes waived his entitlement to the 70-day time limit for legitimate reasons of strategy, meaning that Schneider's failure to move to dismiss the indictment subsequently was not an inadvertent waiver of a right Reyes still retained. However, § 3161(c)'s 70-day time limit is not waivable by the defense, either expressly or through estoppel, except by failure to move to dismiss an

8

indictment. *Zedner*, 126 S.Ct. at 1987-88.[2]  Therefore, Schneider only effectively waived Reyes' right to a speedy trial when the day of trial arrived and he failed to move to dismiss the indictment, and it is far less clear that this failure to move to dismiss was strategic.  If, as Schneider implied on March 18, 2005, delay was to the benefit of his client, Gov.'s Mem. Ex. D 4, he could have procured more delay for Reyes by moving to dismiss the indictment at the eve of trial.  Thus, his failure to do so may have been inadvertent rather than strategic.

However, there are sound tactical reasons why Schneider may have wished to avoid moving to dismiss the indictment.  It is true that delay apparently served his client's purposes when, as on March 18, 2005, the government consented to set a trial date two months later.  But that does not imply that the delay procured by moving to dismiss the indictment would have been so valuable as to outweigh the risks that action would have created for his client.  If Schneider had moved to dismiss the indictment, I would have dismissed it without prejudice. *See* 18 U.S.C. § 3162(a)(2) (setting forth factors to guide court's decision whether to dismiss with prejudice).  The government would have been free to seek a new indictment and, if it wished and was able to, to seek additional charges.  Consenting to delay and then moving to dismiss the indictment on speedy trial grounds would have hardened the government's attitude towards Reyes, and Schneider may have calculated that this cost outweighed the benefit of delay obtained by a dismissal without prejudice.  Therefore, Schneider's waiver of Reyes' speedy trial objection may have been strategic instead of inadvertent.

---

[2] The government cites the Second Circuit's opinion in *United States v. Zedner*, 401 F.3d 36 (2d Cir. 2005), for the proposition that waiver is sometimes possible when adjournments are requested by the defense. As Reyes notes, however, the Supreme Court's opinion in *Zedner*, 126 S. Ct. at 1987-88, expressly overruled the Second Circuit on this point.  Pet'r's Reply, Sept. 14, 2007, 2.

9

Even if Schneider's waiver was inadvertent, the test for deficient performance of counsel is an "objective standard," *Strickland*, 466 U.S. at 688, and since a "'reasonably competent attorney'" might have chosen to waive Reyes' speedy trial right, *id.* at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 770 (1970)), Reyes still would not be able to overcome the "strong presumption" that Schneider's counsel fell within the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. Thus, Schneider's performance in waiving Reyes' speedy trial objection was not deficient. Even if it were, moreover, Reyes would still not have been prejudiced. As noted above, Reyes was entitled at best to a dismissal of indictment without prejudice, and there is no evidence to suggest that the government would have been unable to obtain a second indictment or a second guilty verdict. Therefore, Schneider was not constitutionally ineffective in waiving Reyes' objection to the delay in his trial.

C. *Schneider's Failure to Consult with Reyes Regarding Defense Strategy*, *Failure to Notify Reyes of His Right to Testify, and Failure to Call Defense Witnesses*

There is significant dispute regarding the facts underlying Reyes' claims that Schneider failed to consult with him about strategy, to call two individuals as witnesses, and to permit Reyes to testify. Nevertheless, I find I can resolve these issues without holding an evidentiary hearing. 28 U.S.C. § 2255 provides that "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

However, the statutory requirement of a "hearing" is flexible and can be satisfied by means short of a full-fledged testimonial hearing. The Second Circuit's decision in *Chang v. United States* concerned the § 2255 petition of a defendant who claimed that his defense lawyer,

10

in off-the-record conversations, forbade him from testifying on his own behalf. 250 F.3d 79, 81 (2d Cir. 2001). The district court denied Chang's petition after soliciting an affidavit from Chang's trial counsel but without holding an evidentiary hearing, and Chang appealed the denial of his petition. *Id.* at 81-82. The court of appeals held that for claims of constitutional ineffective assistance of counsel, where the gravamen of the complaint, though "improbable," is not "so clearly bereft of merit as to be subject to dismissal on its face," and concerns "off-the-record interactions" that cannot be readily disproven by looking at the record, some type of "hearing" is required. *Chang*, 250 F.3d at 85. However, the detailed affidavit submitted by Chang's trial counsel was credible enough that it, together with the record, satisfied this flexible "hearing" requirement. *Id.* at 85-86; *see also id.* at 86 ("[T]he district court may use methods under Section 2255 to expand the record without conducting a full testimonial hearing." (citing *Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977))).

In affirming the district court's decision not to hold an evidentiary hearing, the court of appeals noted the advantages of this approach:

> It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing. The district court reasonably decided that the testimony of Chang and his trial counsel would add little or nothing to the written submissions. To be sure, the court did not have before it either the demeanor evidence or the cross-examination of counsel that would have resulted from a full testimonial hearing. Nevertheless, we cannot say that it was an abuse of discretion on the part of the district court to conclude that such a hearing would not offer any reasonable chance of altering its view of the facts. Chang bore the burden of proving his claim. His proffer involved a generic claim-one that can be, and is often, made in any case in which the defendant fails to testify-based solely on his own highly self-serving and improbable assertions. Trial counsel's detailed description of events was eminently credible. And Judge Glasser, having tried the case, was intimately familiar with the trial proceedings and the events and

11

>circumstances surrounding them. It was within the court's discretion to determine that more was not needed.

*Chang*, 250 F.3d at 86.

All of the factors cited by the court of appeals in *Chang* are applicable to this case. I credit Schneider's detailed and consistent affirmation over Reyes's self-serving and generic assertions regarding Schneider's alleged failure to consult with him regarding trial strategy and to inform him of his right not to testify. Additionally, I credit in its entirety Schneider's account of his decision not to call Adon and Valdez as witnesses. In light of these findings, Reyes has failed to overcome the presumption that Schneider's trial strategy, including both the decisions that Reyes complains of here and Schneider's decision not to seriously contest the conclusion that Reyes had intent to distribute the heroin he attempted to buy, fell within the "wide range of reasonable professional assistance." *Strickland*, 668 U.S. at 689. Accordingly, I reject Reyes's claims that Schneider failed to consult regarding trial strategy, improperly conceded Reyes' guilt, and failed to inform Reyes of his right to testify, and his claim that Schneider performed deficiently in not calling Adon and Valdez as witnesses.

D.  *Schneider's Failure to Object to Witness Testimony and Physical Evidence*

Reyes claims that Schneider was ineffective in failing to object to testimony regarding a drug conspiracy in Puerto Rico that implicated Pino-Correa, Pet'r's Mem. 12; in failing to object to the testimony of the government's expert witness concerning what quantities of heroin, and what degree of purity, are consistent with distribution rather than personal use, *id.* at 12-13; and in failing to object to the admission of the sample of imitation heroin into evidence, *id.* at 13. Reyes apparently believes the witness testimony should have been excluded as irrelevant, *see id.* at 12 (arguing that testimony regarding the Puerto Rico conspiracy could

12

"mislead the Jury"); *id.* (arguing that expert testimony "was not necessary"), and that the imitation heroin sample was not properly authenticated, *id.* at 13 (arguing that the government's agent did not testify that the drug sample had been found on him prior to its entry into evidence). Reyes is wrong as to each item of evidence.

Under Federal Rule of Evidence 402, all relevant evidence is presumptively admissible. Relevant evidence is any evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. However, Rule 402's presumption of admissibility may be rebutted when otherwise-relevant evidence's probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The testimony regarding the drug conspiracy in Puerto Rico explained how Wilfredi Pino-Correa came to be arrested for attempting to purchase highly concentrated heroin and to cooperate with the government, *see* Trial Tr. 32-44 (direct testimony of Agent Larkin); Trial Tr. 246-60 (direct testimony of Agent Martinez), and thus had substantial probative value regarding facts of central importance to the case. The evidence not only set the backdrop for the encounter between Pino-Correa and Reyes, it was also integral to the *defense* of the case. Schneider argued in his opening statement that Pino-Correa could not be believed because he and his father were international drug traffickers and Pino-Correa, having been caught trying to receive the kilogram from his father, then sought "to get somebody else arrested" to curry favor with the government. Trial Tr. 26. That theme remained a centerpiece at summation, where

13

Schneider said, "Reyes was nothing more than a wannabe, a chump, . . . the perfect person to serve up to the DEA to save . . . Pino-Correa and his father." Id. at 248. In short, it was not ineffective to allow this evidence to be received without objection because it served the defendant's trial strategy to allow it in.

The expert's testimony tended to show that possession of the drug sample alone, if it was of 85% purity (the same purity level as the kilogram of heroin the government seized in Puerto Rico), would be consistent with intent to distribute. This testimony might have proved crucial: Had the jury believed that Reyes had not intended to buy the entire kilogram but had intended to buy the sample, this testimony if credited would have permitted the jury to find Reyes guilty of attempted possession with intent to distribute.

Reyes's argument against this testimony's admissibility is that he never possessed heroin, only imitation heroin. Initially, this argument founders on the fact that Reyes was charged only with attempted possession, not possession. Recharacterized in the light most favorable to Reyes, *cf. Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (noting that complaints filed by pro se litigants are construed to raise the strongest arguments they suggest), the objection might be that the expert's testimony would be relevant to intent to distribute only if the jury found that Reyes believed the imitation heroin sample (which was of course in fact 0% pure heroin) to have been a sample taken from the highly concentrated heroin originating in Puerto Rico (which was 85% pure heroin). However, Federal Rule of Evidence 104(b) provides that "[w]hen the relevancy of evidence depends on the fulfillment of a condition of fact," in this case the condition that Reyes believed the imitation heroin sample to be 85% pure heroin, "the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a

14

finding of the fulfillment of the condition." Fed. R. Evid. 104(b). Here, the record contained ample evidence (including a stipulation that the heroin recovered in Puerto Rico was 85% pure and the testimony of Pino-Correa and two agents to the effect that Reyes had planned to buy that heroin from Pino-Correa) to support an inference that Reyes believed the heroin was 85% pure. Therefore, the expert testimony was properly admitted as conditionally relevant.

Finally, Reyes's challenge to the authentication of the sample of imitation heroin fails as well. Federal Rule of Evidence 901 provides that physical evidence can be authenticated by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Agent Larkin's testimony that he recognized the sample (a quantity of pancake mix wrapped in aluminum foil) from having personally prepared it certainly satisfies Rule 901's flexible standard for authentication. *See* Rule 901(b)(1) (listing testimony by a witness with knowledge to be an acceptable form of authentication).

As all of the above objections would have been overruled if made, Schneider did not perform deficiently by failing to make them.

E.  *Schneider's Failure to Object to Jury Instructions*

Reyes's final allegation regarding Schneider's performance -- that Schneider failed to object to a jury instruction regarding possession with intent to distribute -- is belied by the record. The instruction given concerned only the charge of attempted possession with intent to distribute, not actual possession with intent to distribute. Trial Tr. 368, 370-72. If Schneider had objected to the jury instruction on the ground that it concerned possession, he would have been overruled.

F.  *Kwasnik's Alleged Failure to Consult With Reyes*

Although Kwasnik's account of his interaction with Reyes is presented in an unsworn letter, *cf. Chang*, 250 F.2d at 81-82, I credit it over Reyes's account, particularly in light of the corroboration provided by Schneider's assertion that Reyes was unreliable in his description of his criminal conduct and his interactions with his attorneys. This is also consistent with my own assessment of Reyes's poor credibility; as I am "intimately familiar" with the proceedings that are the subject matter of these claims, *id.* at 86, I find Reyes's "generic" claims to be "self-serving and improbable," *id.*, and do not credit them generally. While I am not as familiar with the proceedings which took place on appeal, my assessment of Reyes's credibility, formed at trial and the review and argument of this petition, leads me to conclude that there is little to be gained by holding an evidentiary hearing.

Reyes claims that Kwasnik's failure to consult with him is evidenced by his failure to object to the speedy trial issue in his case. Pet'r's Reply, Aug. 10, 2007, 15. However, it is no mark of neglect or incompetence that Kwasnik chose to pursue what he saw as a stronger issue, especially where, as described above, Schneider was not in fact deficient in waiving Reyes's speedy trial rights. *See also Jones v. Barnes*, 463 U.S. 745, 754 & n.7 (1983) (appellate counsel under no obligation to raise every nonfrivolous issue on appeal). Therefore, I find the considerations in favor of dispensing with an evidentiary hearing present in *Chang*, 250 F.3d at 86, to be present here as well, and further find that requiring Kwasnik to submit a sworn affirmation regarding his performance would "add little or nothing" to the record before me, *id.*

G. *Kwasnik's Failure to Notify Reyes of the Possibility of Supreme Court Review*

Kwasnik does not dispute Reyes's assertion that he failed to discuss the possibility of petitioning the Supreme Court for a writ of certiorari. However, this omission does not constitute ineffective assistance of counsel, as there is no right to counsel for petitions for discretionary appeals taken from the first appeal as of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal as of right, and no further."); *cf. Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since [state prisoner applying for discretionary state supreme court review] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely.").

## CONCLUSION

For the reasons set forth above, all of Reyes' charges of ineffective assistance of counsel are without merit. Accordingly, the petition is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
October 10, 2007